IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| SOURCEPROSE CORPORATION | § | |
| Vs. | § | CIVIL ACTION NO. 2:04-CV-265 |
| FIDELITY NATIONAL FINANCIAL, ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

The court issues this memorandum opinion and order to resolve the parties' claim construction disputes.

**1.      Introduction.**

In this case, the plaintiff, SourceProse, Inc. ("SourceProse") sued Fidelity National Financial, Inc. and various affiliated companies (collectively "Fidelity"), for infringement of United States Patent Nos. 6,631,326 ("the '326 patent"), 6,678,615 ("the '615 patent"), and 6,842,698 ("the '698 patent"), all of which relate to systems and methods for performing flood zone determinations. After considering the parties' submissions, the arguments of counsel, and the pertinent portions of the record, the court is of the opinion that the claims of the patents should be construed as set forth in this opinion.

**2.      Legal Principles Relevant to Claim Construction.**

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). Claim construction is an issue

of law for the court to decide. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

To ascertain the meaning of claims, the court looks to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. Under the patent law, the specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). And, although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This court's claim construction decision must be informed by the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court

reiterated that "the *claims* of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (emphasis added)(quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words used in a claim are generally given their ordinary and customary meaning. *Id.* The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e. as of the effective filing date of the patent application." *Id.* at 1313. This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention. The patent is addressed to and intended to be read by others skilled in the particular art. *Id.*

The primacy of claim terms notwithstanding, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument." *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims. *Id.* at 1314-17. As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims." *Bates v. Coe*, 98 U.S. 31, 38 (1878). In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

3

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. The prosecution history helps to demonstrate how the inventor and the PTO understood the patent. *Phillips*, 415 F.3d at 1317. Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings. *Id.* Nevertheless, the prosecution history is intrinsic evidence. That evidence is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony. The *en banc* court condemned the suggestion made by *Tex. Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Id.* at 1319-24. The approach suggested by *Tex. Digital*–the assignment of a limited role to the specification–was rejected as inconsistent with decisions holding the specification to be the best guide to the meaning of a disputed term. *Id.* at 1320-21. According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of

4

words rather than on the meaning of the claim terms within the context of the patent." *Id*. at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter. *Id*. What is described in the claims flows from the statutory requirement imposed on the patentee to describe and particularly claim what he or she has invented. *Id*. The definitions found in dictionaries, however, often flow from the editors' objective of assembling all of the possible definitions for a word. *Id.* at 1321-22.

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record. In doing so, the court emphasized that claim construction issues are not resolved by any magic formula. The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language. *Id*. at 1323-25. Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant. The court now turns to a discussion of the claim construction disputes.

**3.    Discussion.**

The technology in this case relates to methods and systems for performing flood zone determinations. *See* '326 patent, Abstract. By way of background, before real property is bought, sold, or insured, a flood zone determination is performed. This determination involves an examination of whether a particular piece of property falls within a flood zone. The Federal Emergency Management Agency ("FEMA") publishes a library of paper maps which depict the geographic location of the various flood zones within the United States. In a conventional flood zone determination, an analyst pulls the appropriate FEMA map, locates the property on the map,

and determines whether the property is in a flood zone.

The patents-in-suit describe systems methods for automating this process through the use of a computer system. The '326 patent describes these systems and methods. In the preferred embodiment, a user enters the street address or full legal address into a data processing system. The system determines, from the address, which raster map includes that particular property. A raster map is a computerized map image that resembles a conventional paper map. In the preferred embodiment, a raster map is created by scanning a conventional paper FEMA map. These maps are grid-based maps composed of pixels (or dots) of color or black & white. Each pixel in the grid can be referenced by the pixel coordinates. The raster maps are "georeferenced," meaning that the digital map coordinates are related to actual geographic coordinates, such as latitude and longitude. The system retrieves the particular raster map, and utilizes georeferencing information to locate the property on the raster map. The user is then able to examine the flood zone indications on the displayed raster map.

Claim 1 of the '326 patent is an illustrative independent claim:

A method for determining flood zone classification for real property, comprising the steps of:

receiving property identification data in a data processing system;

determining geographic coordinates corresponding to the property identification data;

displaying a map image with image coordinates corresponding to the geographic coordinates; and

storing a flood zone classification corresponding to the geographic coordinates.

'326 patent, claim 1.

The '615 patent is a continuation-in-part of the '326 patent. The '615 patent describes how

6

the system selects from among several flood maps to determine the flood zone classification of a given piece of real estate. Within each individual flood map are "insets." An "inset" is an area of a map which indicates FEMA flood zone classifications. A virtual "bounding box" is drawn around each inset. In the patent, the bounding box is illustrated as being the largest rectangle necessary to include a particular inset. As illustrated in Figure 7 of the patent, the system overlays an imaginary grid of rectangles over the area covered by the flood maps. For each grid rectangle that intersects a virtual bounding box, the outline of the inset enclosed by the bounding box is traced to determine whether that inset intersects the grid rectangle. If there is an intersection, the inset is added to a list which is associated with the grid rectangle. The system maintains these lists and is able to quickly identify which inset or insets correspond to a particular property location.

Claim 1 of the '615 patent is an illustrative independent claim:

A computer-implemented method of evaluating a characteristic or trait present at and in the vicinity of a geographic location from plural, initially non-georeferenced maps that depict the characteristic or trait being evaluated and other related data and that have been georeferenced, which comprises:

(a)     constructing a virtual bounding box around each inset of the maps;

(b)     defining a virtual rectangular geographic grid system covering the total area covered by the maps;

(c)     for each grid rectangle that intersects an inset bounding box, tracing the inset enclosed by the bounding box to determine if there is intersection of the grid rectangle and the inset;

(d)     if there is intersection of the grid rectangle and the inset, adding the identity of the inset to a list associated with the grid rectangle;

(e)     geocoding the location of the geographic location;

(f)     examining the insets contained in the list associated with the one grid rectangle containing the geographic location and, using the data thereon, performing the

7

evaluation.

The '698 patent is a continuation of the '615 patent, and shares a similar specification. This patent claims additional features relating to the inventions described in the SourceProse patents. Claim 1 of the '698 patent is an illustrative independent claim:

A method for displaying maps for use in determining flood zone classifications for real property, comprising:

receiving property identification data in a data processing system;

determining geographic coordinates corresponding to the property identification data;

ascertaining a georeferenced map that contains the geographic coordinates and is usable to make a flood zone determination for the real property; and

displaying the georeferenced map with image coordinates corresponding to the geographic coordinates.

Bearing this background in mind, the court now turns to the construction of the disputed terms.

## 1.    Determining geographic coordinates corresponding to the property identification data.

The first disputed phrase appears in the '326 patent and is "determining geographic coordinates corresponding to the property identification data." The parties agree that "geographic coordinates" means "latitude and longitude or other coordinate set that defines the position of the property on the earth's surface." The dispute concerns the term "determining."

The plaintiff suggests that the term needs no construction. Alternatively, the plaintiff suggests that the term means "identifying." The defendants contend that the term "determining" means "converting" such that the phase means "converting" the received property identification data into geographic coordinates. The court rejects the defendants' position. As the plaintiff points out, in other portions of the defendants' brief, the defendants define "determining" synonymously with

8

"identifying." The court agrees with the plaintiff's alternate construction and construes the term "determining" to mean "identifying."

The parties also dispute the meaning of "property identification data." The plaintiff proposes it means "street address, legal address, metes and bounds, latitude and longitude, or the like." The defendants propose that the term means "street address, legal address, or metes and bounds." Contrary to the defendants' arguments, the patent specification does not restrict the term to the examples stated therein. As such, the court construes the term "property identification data" to mean "street address, legal address, metes and bounds, latitude and longitude, or the like."

## 2.    Displaying a map image with image coordinates corresponding to the geographic coordinates

The parties dispute nearly every term in this limitation. Specifically, they disagree on the meaning of "map image," "image coordinates, and "corresponding," as well as the meaning of the limitation as a whole. The court will address each of the parties' disputes.

Beginning with the term "map image," the plaintiff contends that the term means "a representation of a flood map, such as a FEMA flood map, stored as a grid of pixels." Based on the prosecution history, the defendants contend the phrase "map image with image coordinates" is limited to "a georeferenced raster map image."

With respect to the prosecution history, the plaintiff concedes that it surrendered vector maps during prosecution, yet asserts that the scope of the surrender is limited to vector maps. The court agrees. The court observes that dependent claim 5 requires a map image that is "a digital raster image." '326 patent, claim 5. Claim differentiation counsels a broader construction for independent claim 1 than for claim 5. The court therefore construes the term "map image" to mean "a

representation of a flood map, such as a FEMA flood map, stored as a grid of pixels."

The next dispute involves the term "image coordinates." The plaintiff suggests that the term means "locations that define the position of a point on an image." The defendants, building on their argument that the claim is limited to raster maps, contend that term "image coordinates" means "X,Y pixel locations (row, column intersections) that make up a raster image." The court has rejected that argument and therefore adopts the plaintiff's proposed construction of "image coordinates."

Next, the defendants contend that claim 1 of the '326 patent implicitly requires that the map image be a "georeferenced" raster map image and that the patentee acted as his own lexicographer in defining the term "georeferenced" and urge that the term "georeferenced" means georeferencing *all of the X,Y pixel locations* of the georeferenced raster map images. With respect to the first point, other claims explicitly require that certain map images be "georeferenced." As a result, the court rejects the defendants' attempt to limit the claims to the preferred embodiment. With respect to the second argument, although some portions of the specification describe georeferencing in a specific manner, other portions of the specification provide a broader meaning of the term. The '326 patent states explicitly that "[g]eoreferencing is the process of relating source coordinates to referenced geographic coordinates, which are typically in standard latitude and longitude." '326 patent, col. 2, ll. 16-19. Although the preferred embodiment contains some of the details sought by the defendants, the plaintiff's construction is correct for the "georeferenced" term, and the court adopts it for use in those claims in which it appears.

Finally, the defendants contend that this limitation, read as a whole, requires "marking" the location of the property on the map image. The claim language does not require this. Rather, the language of the claim requires "*displaying a map image with image coordinates corresponding to*

10

*the geographic coordinates.***"** It is true, as the defendants urge, that the description of the preferred embodiment describes a method which "marks on each map the location of the property (step 415)." '326 patent, col. 4, ll. 48-50. The claim language, however, requires only that the map image be displayed. Accordingly, the court rejects the defendants' proposed limitation.[1]

3.    **(C) Displaying and superimposing on a displayed georeferenced base map, which includes the geographic location of the property, the boundaries of those georeferenced FEMA map inserts that are likely to contain the property's geographic coordinates and those map inset boundaries that are proximate to the property's geographic coordinates**

This phrase appears in claim 15 of the '326 patent. The only dispute concerning this term is not a proposed construction, but instead a claim of invalidity on the grounds that the specification is deficient under 35 U.S.C. § 112 ¶ 1. The argument is that the term "likely" renders the claim indefinite as one of ordinary skill in the art would not understand the bounds of the claim. This court's practice, when feasible, has been to reserve such arguments for motions made after the claim construction opinion issues. The court will follow its usual practice in this case.

4.    **Constructing a virtual bounding box around each inset of the maps**

This term appears in the '615 patent. The defendants contend that the phrase means "drawing an imaginary box around each and every inset of the maps." The plaintiff contends that the term needs no construction; however, the plaintiff would agree to a construction of "defining an imaginary box around each inset of the maps." The court adopts this latter approach and defines the term to mean "defining an imaginary box around each inset of the maps."

5.    **Forming a raster image of each flood map**

This limitation is found in claim 5 of the '615 patent. The plaintiff contends that it means

---

[1]    The term "corresponding" needs no construction.

11

"scanning a paper flood map." The defendants contend that the term means "creating a raster map image, defined by X,Y locations, from a paper flood map containing flood zone information." The court rejects both parties' constructions. The patentee knew how to use the term "scanning" and did so in the specification. As such, the court rejects the plaintiffs' limiting construction. The court construes the term to mean "creating a raster image of each flood map."

6. **Ascertaining a georeferenced map that contains the geographic coordinates**

This limitation appears in claim 1 of the '698 patent. The plaintiff contends that no construction is necessary. Alternatively, the plaintiff urges that the term means "determining a georeferenced map that includes the geographic coordinates." The defendants contend that the term means "determining the georeferenced raster FEMA map image containing the property latitude and longitude or other coordinate set that defines the position of the property on the earth's surface using a virtual grid of rectangular regions covering all geographic areas contained within the FEMA maps, creating a list of insets that intersect with each grid-rectangle, selecting the grid rectangle containing the property latitude and longitude, and determining which inset associated with the grid rectangle contains the property."

Previously, the court rejected the defendants' attempt to limit claim 1 to the disclosed embodiment. That holding largely determines the outcome of this issue. The court adopts the plaintiff's alternative construction and defines the term to mean "determining a georeferenced map that includes the geographic coordinates."

7. **Candidate georeferenced maps**

Dependent claim 2 of the '698 patent provides:

The method of claim 1, wherein the ascertaining further comprises:

12

examining *a plurality of candidate georeferenced maps* with boundaries that are proximate to the geographic coordinates, and

inspecting *the candidate georeferenced maps* to determine which contains the geographic coordinates and is usable to make the flood zone determination for the real property.

The parties dispute what the term "candidate georeferenced maps" means.  The plaintiff contends that no construction is necessary.  Alternatively, the plaintiff suggests that the term should be construed to mean "georeferenced maps that may be of interest."  The defendant contends that the term means "two or more raster FEMA map images containing the listed insets that intersect with the selected grid-rectangle containing the property latitude and longitude or other coordinate set that defines the position of the property on the earth's surface."  The court adopts the plaintiff's alternative construction for this term.

**8.     Displaying, with the base map, data that is usable to make a flood zone determination for the real property**

This limitation is found in claim 15 of the '698 patent.  There are two components to the term.  The first is "displaying, with the base map."  The second component of the limitation is "data that is usable to make a flood zone determination."  The court will address each component.

With respect to the first portion, "displaying, with the base map," the plaintiff suggests that no construction is required.  Alternatively, the plaintiff suggests that the court should construe the term to mean "showing, on a CRT or other computer screen to a user, with the base map."  The defendants contend that the term "displaying, with the base map" means "showing, on a CRT or other computer screen to a user, with the georeferenced raster topographical map upon which information may be placed."  Thus, the defendants contend that the base map must be a georeferenced raster topographical map and that "base" means a map on which information may be

13

placed. The court is persuaded that the term "base map" is the key term which requires construction. The court defines the term to mean "a map on which information may be placed."

With respect to the second component of the phrase, "data that is usable to make a flood zone determination," the plaintiff contends that the phrase means data which "includes FEMA designations of the same accuracy as a FEMA Flood Insurance Rate Map that may be used to make a flood zone determination for the real property." The defendants contend that the clause means "FEMA designations that may be used to make a flood zone determination for the real property." Although the two definitions are close, the plaintiff's construction is too limiting. The claim language only requires data that "may be used" to make a flood zone determination. As a result, the defendants' construction appears proper, and the court adopts it.

**9.  Displaying a base map with image coordinates that correspond to the geographic coordinates.**

The court has defined most of these terms previously and incorporates by reference its previous constructions. The phrase as a whole needs no construction.

**10.  Applicability of § 112 ¶ 6.**

There is a single, overarching issue with respect to all of the terms contended to be drafted according to § 112 ¶ 6. None of the terms uses the word "means," but the defendants seek to construe all of them as means-plus-function terms. The court has reviewed the "component" limitations of the '326 patent and the "facilities" limitations of the '615 patent. The terms are not within the framework of § 112 ¶ 6. As a result, the court rejects the defendants' attempts to limit the terms to the preferred embodiment and further rejects the argument that any claims are invalid under *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241 (Fed. Cir. 2005) or *WMS Gaming, Inc. v.*

14

*International Game Technology*, 184 F.3d 1339, 1348-49 (Fed. Cir. 1999).

      SIGNED this 23rd day of February, 2006.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE